UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIMO C. GOMEZ,<br><br>    Plaintiff,<br><br>    v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,<br><br>    Defendant. | No.  1:22-cv-00770 DAD AC<br><br>**FINDINGS AND RECOMMENDATIONS** |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner"), denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-34.[1]  For the reasons that follow, the undersigned recommends that plaintiff's motion for summary judgment be GRANTED, and defendant's cross-motion for summary judgment be DENIED.

I.  PROCEDURAL BACKGROUND

Plaintiff applied for DIB on November 10, 2014.  Administrative Record ("AR") 191-94.[2]  The disability onset date was alleged to be May 1, 2013.  Id.  In an ALJ decision dated April 4,

---

[1] DIB is paid to disabled persons who have contributed to the Disability Insurance Program, and who suffer from a mental or physical disability.  42 U.S.C. § 423(a)(1); Bowen v. City of New York, 476 U.S. 467, 470 (1986).
[2] The AR is electronically filed at ECF Nos. 11-1 (AR 1 to AR 1162).

1

2019, the ALJ issued a partially favorable decision, finding plaintiff disabled as of January 4, 2018, but not before that. AR 16–24. After the Appeals Council denied review, and the Commissioner's partially favorable April 2019 decision became final, plaintiff filed a civil action. AR 713–14. The parties stipulated to a remand for further proceedings and a new ALJ decision that would not disturb the finding of disability as of January 4, 2018. AR 707–08. The court granted the stipulation and ordered remand for further proceedings. AR 709–10. The Appeals Council affirmed the ALJ's finding of disability as of January 4, 2018 and vacated the prior decision "with respect to the issue of disability prior to January 4, 2018." AR 722–23.

On remand, ALJ Jane Maccione held a new hearing on November 30, 2021. AR 637–81. Plaintiff was present with counsel, and plaintiff testified. AR 637-38. Also present and testifying were Marcos Molinar, Vocational Expert, and Abtullahi Elmi, Medical Expert. Id. ALJ Maccione issued a new decision again finding plaintiff not disabled for the period from May 1, 2013, through January 3, 2018. AR 616-31. That decision became the final order of the Commissioner from which Gomez now seeks review.

Plaintiff commenced this action for judicial review pursuant to 42 U.S.C. § 405(g) on June 23, 2022. ECF No. 1. The case was re-assigned to the undersigned and District Judge Dale A. Drozd on September 13, 2023. ECF No. 26. The parties have not consented to the jurisdiction of the magistrate judge. The parties' cross-motions for summary judgment, based upon the Administrative Record filed by the Commissioner (ECF No. 11), have been fully briefed. ECF Nos. 16 (plaintiff's summary judgment motion), 20 (Commissioner's summary judgment motion), 23 (plaintiff's reply).

## II. FACTUAL BACKGROUND

Plaintiff was born in 1958 and accordingly was, at age 54, a person closely approaching advanced age under the regulations, at the alleged disability onset date.[3] AR 193. Plaintiff has a GED and can communicate in English. AR 261, 263. Plaintiff alleged disability due to thoracic, cervical, and lower spine injuries. AR 262. Plaintiff has work history as a sales executive and senior sales executive from 2000 to 2013. Id.

---

[3] See 20 C.F.R. § 404.1563(d) ("person closely approaching advanced age").

## III.  LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld "if it is supported by substantial evidence and if the Commissioner applied the correct legal standards." Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003).  "'The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . ..'" Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).

Substantial evidence is "more than a mere scintilla," but "may be less than a preponderance." Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012).  "It means such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotation marks omitted).  "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).  Although this court cannot substitute its discretion for that of the Commissioner, the court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Secretary of HHS, 846 F.2d 573, 576 (9th Cir. 1988); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) ("The court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence.").

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001).  "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).  However, the court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) ("It was error for the district court to affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss").

////

The court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006) (quoting Stout v. Commissioner, 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

## IV. RELEVANT LAW

Disability Insurance Benefits and Supplemental Security Income are available for every eligible individual who is "disabled." 42 U.S.C. §§ 402(d)(1)(B)(ii) (DIB), 1381a (SSI). Plaintiff is "disabled" if she is "'unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment . . ..'" Bowen v. Yuckert, 482 U.S. 137, 140 (1987) (quoting identically worded provisions of 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)).

The Commissioner uses a five-step sequential evaluation process to determine whether an applicant is disabled and entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Barnhart v. Thomas, 540 U.S. 20, 24-25 (2003) (setting forth the "five-step sequential evaluation process to determine disability" under Title II and Title XVI). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

20 C.F.R. § 404.1520(a)(4)(i), (b).

> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, the claimant is not disabled.

Id. §§ 404.1520(a)(4)(ii), (c).

> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is disabled. If not, proceed to step four.

Id. §§ 404.1520(a)(4)(iii), (d).

> Step four: Does the claimant's residual functional capacity make him capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.

Id. §§ 404.1520(a)(4)(iv), (e), (f).

> Step five: Does the claimant have the residual functional capacity perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Id. §§ 404.1520(a)(4)(v), (g).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. 20 C.F.R. §§ 404.1512(a) ("In general, you have to prove to us that you are blind or disabled"), 416.912(a) (same); Bowen, 482 U.S. at 146 n.5. However, "[a]t the fifth step of the sequential analysis, the burden shifts to the Commissioner to demonstrate that the claimant is not disabled and can engage in work that exists in significant numbers in the national economy." Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); Bowen, 482 U.S. at 146 n.5.

## V. THE ALJ's DECISION

The ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2022 (Exhibit 9D).
>
> 2. [Step 1] The claimant engaged in substantial gainful activity during the following period: August 1, 2016 through January 3, 2018 (20 CFR 404.1520(b) and 404.1571 et seq.).
>
> 3. [Step 1, continued] However, there has been a continuous 12-month period(s) during which the claimant did not engage in substantial gainful activity. The remaining findings address the period(s) the claimant did not engage in substantial gainful activity (Exhibits 2D-5D; 8D-13D).
>
> 4. [Step 2] The claimant has the following severe impairments: degenerative disc disease of the thoracic spine; degenerative disc disease and facet syndrome of the lumbar spine, status post-L4-S1 laminectomy in 2006; disc protrusion at C5-C6 with annular bulge and degenerative spurring severe at right and mild left foraminal stenosis with moderate left central canal stenosis abutting the left ventral margin of the cervical cord with C2-C3 bone fusion; and cervical facet syndrome with upper extremity radiculopathy (20 CFR 404.1520(c)).
>
> 5. [Step 3] The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 6. [Residual Functional Capacity ("RFC")] After careful consideration of the entire record, from the alleged onset date through January 3, 2018, the undersigned finds that the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), except he was able to stand and/or walk for up

to four hours, cumulatively, through the workday. The claimant was able to sit for about six hours, cumulatively, through the workday. He required a rest break of five to six minutes for every one hour of walking, but normal rest breaks would accommodate some of those breaks. The claimant was able to climb ramps and stairs occasionally; he could not climb ladders, ropes, or scaffolds. He was able to balance, stoop, kneel, and crouch occasionally; he could not crawl. The claimant was able to reach occasionally above shoulder level bilaterally. He needed to avoid concentrated exposure to vibration and to extremes of cold.

7. [Step 4] From the alleged onset dated through July 3, 2018, the claimant was capable of performing past relevant work as an office machine sales representative. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

8. The claimant has not been under a disability, as defined in the Social Security Act, from May 1, 2013, through January 3, 2018 (20 CFR 404.1520(f)).

AR 622-631. As noted, the ALJ concluded that plaintiff was "not disabled" under Title II between the alleged onset date of May 1, 2013 and July 3, 2018. AR 631.

## VI. ANALYSIS

Plaintiff alleges that the ALJ erred by (1) improperly rejecting the medical opinion of plaintiff's treating physician; (2) improperly rejecting plaintiff's subjective testimony; and (3) failing to support the step four finding. ECF No. 16-1 at 6.

### A. The ALJ Improperly Discredited Plaintiff's Treating Physician

Plaintiff contends that the ALJ improperly discredited the medical opinion of his treating physician, Dr. Kasra Amirdelfan. The undersigned agrees that the ALJ provided insufficient rationale under the applicable law for discrediting Dr. Amirdelfan.

1. The Medical Evidence

In relevant part, the ALJ considered the medical opinions of (1) medical expert Dr. Abudullahi Elmi, an orthopedist; (2) treating physician Dr. Kasra Amirdelfan; and (3) State agency medical consultant Dr. C.R. Dann. AR 628-29. The ALJ also addressed the medical records of treating physicians David Chow and Dr. Robert Rovner. AR 626-27.

a. The Treatment Records of Dr. Chow and Dr. Rovner

Dr. David Chow treated plaintiff for his spinal pain between May 28, 2013 and March 4,

2014, frequently noting tenderness to palpation and decreased range of motion in plaintiff's thoracic spine. AR 309-37. Dr. Chow indicated that bending, twisting, and lifting aggravated plaintiff's symptoms and recommended Gomez avoid these activities. AR 317. Dr. Chow opined plaintiff's diagnoses included bilateral thoracic and lumbar facet joint pain, thoracic facet joint arthropathy, thoracic sprain/strain, and thoracic degenerative disc disease. AR 326.

Dr. Robert Rovner wrote on December 4, 2013 that plaintiff had undergone a left lumbar laminectomy surgery at L3-4 in 2006 and currently had lumbar spondylosis, foraminal stenosis, and left sciatica. AR 360. Dr. Rovner recommended a discogram to get a better sense of the source of Gomez's pain. Id. The discogram of plaintiff's lumbar spine on February 20, 2014 revealed moderate disc degeneration at L2-3, moderate to severe disc degeneration at L3-4, and severe disc degeneration at L4-5. AR 353-55. Plaintiff's doctor, Dr. Kasra Amirdelfan, in a note copying Dr. Rovner, opined the test results showed appeared to have significant disc disease at all levels tested, including not only disc degeneration and reduction in disc height, but also at least moderate concordant pain and moderate injectate pressures at all levels. AR 355.

On March 4, 2014, Dr. Chow noted plaintiff had undergone radiofrequency nerve ablation procedures at T10-11 and T12-L1, in addition to medial branch blocks at the same levels, but that plaintiff continued to have thoracic facet joint pain. AR 309. An MRI of plaintiff's cervical spine performed on June 29, 2015 revealed a left paracentral protrusion with annular bulge and degenerative spurring at C5-6, severe right and mild left foraminal stenosis with moderate left central canal stenosis abutting the left ventral margin of the cervical cord. AR 601-02. The MRI of Gomez's thoracic spine showed mild degenerative changes at T8-9 and T11-12. AR 602. In a note dated February 22, 2016, Dr. Rovner noted these test results and plaintiff's symptoms indicated C5-7 spondylosis, foraminal stenosis, and left upper extremity radiculopathy, in addition to thoracic spondylosis. Id. Because neither Dr. Chow and Dr. Rovner did not issue medical opinions with respect to plaintiff's functioning, the ALJ did not address these medical records with respect to credibility or assignment of weight.

////

////

     b.   <u>The Treatment and Opinion of Dr. Amirdelfan[4]</u>

Plaintiff's treating doctor, Dr. Kasra Amirdelfan, treated plaintiff from May 18, 2014 through October 27, 2014. AR 380-490. He issued an opinion on August 18, 2014, limiting plaintiff to modified work duty involving no prolonged sitting, no forceful pulling, no twisting at the torso, and no lifting greater than 25 pounds. AR 446-47. Dr. Amirdelfan clarified on September 17, 2014 that plaintiff could sit for 30 minutes at a time and walk for 20-30 minutes at a time, with a 10-minute break every hour as needed. AR 434. The ALJ gave "little weight" to Dr. Amirdelfan's opinion, finding it was "not consistent with the overall evidence of record." AR 629. The ALJ cited contrast with "the claimant's persistent physical examination findings of normal motor strength, intact sensation, and normal gait (Exhibits 4F/3, 15, 16, 31, 41, 47, 58, 84, 85, 93, 103; 9F/85, 92, 93, 100, 101, 110, 111, 124, 140, 151, 195, 205): and with the "longitudinal pain management records, which indicated that the claimant's symptoms improved over time wherein the claimant reported pain as two out 10 on medications and seven out of 10 without medications, which was stable since prior visits (Exhibit 9F/23)." AR 629. Further, the ALJ found that Dr. Amirdelfan's restrictions were "not consistent with the claimant work activity over substantial gainful activity levels from August 2016 through January 2018[.]" <u>Id.</u>

     c.   <u>The Opinion of Medical Expert Dr. Elmi</u>

The ALJ called Dr. Abudullahi Elmi to testify as a medical expert (ME) at the hearing on November 30, 2021. AR 653-61. Dr. Elmi stated he had enough information in the file to form an opinion as to plaintiff's condition between May 1, 2013 through January 3, 2018, and opined that plaintiff's impairments did not meet or equal any Listings. AR 653. Dr. Elmi opined that plaintiff would be able to perform light work with 4 hours of standing and walking in an 8-hour day, and with 5- to 6-minute rest breaks after every hour of standing and walking. AR 654. Dr. Elmi was asked to compare his own opinion to that of plaintiff's treating doctor, Dr. Amirdelfan, insofar as Dr. Amirdelfan opined that plaintiff could sit for 30 minutes at a time and walk for 20-30 minutes at a time, with a 10-minute break every hour as needed. AR 657-58. Dr.

---

[4] The ALJ incorrectly referred to Dr. Amirdelfan's opinions as opinions issued by Dr. Pang. AR 628. The opinions discussed belong to Dr. Amirdelfan.

Elmi stated that the difference between the restrictions assessed were a matter of degree insofar as Dr. Elmi's opinion stated plaintiff would need rest breaks after every hour of standing and walking, and Dr. Amirdelfan opinion plaintiff would need rest breaks after every half-hour of standing and walking. AR 661. Dr. Elmi did not make a statement with respect to the difference in length of time needed for breaks. The ALJ accepted the opinion of Dr. Elmi in full, noting that Dr. Elmi examined the entire record. AR 629.

        d.   The Opinion of State Agency Evaluator Dr. Dann

Dr. C.R. Dann, a State agency medical consultant, issued an opinion following an evaluation of the record. AR 92-95. Dr. Dann assessed the following functional restrictions: plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk for about six hours in an eight-hour workday; and sit for six hours in an eight-hour workday. AR 94-95. The ALJ did not fully agree with the findings of Dr. Dann, specifically finding that the record supported additional walking and standing limitations, AR 624, but noted she would further accommodate plaintiff's pain symptoms with additional limitations on standing and/or walking, postural movements, and environmental exposures based upon the opinion of Dr. Elmi. AR 629. The ALJ found the opinion otherwise consistent with and supported by the medical record. Id.

       B.   Principles Governing the ALJ's Consideration of Medical Opinion Evidence

With respect to cases filed before[5] March of 2017, the weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995), as amended (Apr. 9, 1996). Those physicians with the most significant clinical relationship with the claimant are generally entitled to more weight than those physicians with lesser relationships. As such, the ALJ may

---

[5] The Social Security Administration promulgated new regulations that eliminate the deference given to treating physicians, providing that the SSA "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . including those from your medical sources" when evaluating claims filed after March 27, 2017. 20 C.F.R. § 416.920c (titled "How we consider and articulate medical opinions and prior administrative findings for claims filed on or after March 27, 2017") (hereafter "new regulation"). Because the application for disability at issue in this case was filed in 2014, the new regulations do not apply.

9

only reject a treating or examining physician's uncontradicted medical opinion based on clear and convincing reasons. Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008) (internal citations omitted). "The general rule is that conflicts in the evidence are to be resolved by the Secretary and that his determination must be upheld when the evidence is susceptible to one or more rational interpretations." Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987). However, when the ALJ resolves conflicts by rejecting the opinion of an examining or treating physician in favor of the conflicting opinion of another physician (including another examining physician), he must give "specific and legitimate reasons" for doing so. Regennitter v. Comm'r of Soc. Sec. Admin., 166 F.3d 1294, 1298–99 (9th Cir. 1999) ("Even if contradicted by another doctor, the opinion of an examining doctor can be rejected only for specific and legitimate reasons that are supported by substantial evidence in the record.").

### C. The ALJ Erred in Assigning Little Weight to Dr. Amirdelfan's Opinion

Plaintiff raises two main challenges to the ALJ's rejection of Dr. Amirdelfan's opinion. First, he asserts that the ALJ erred in assigning more weight to Dr. Elmi's opinion, although that opinion differed from Dr. Amirdelfan's only "by matter of degree." ECF No. 16-1 at 17. Second, plaintiff argues the ALJ improperly discounted Dr. Amirdelfan's opinion by pointing to instances in the record where Plaintiff's condition was "stable." Id. at 18–20. The court agrees the ALJ erred in both respects.

The crux of the issue with respect to the rejection of Dr. Amirdelfan's opinion in favor of Dr. Elmi's opinion is expressed in following functional restriction in the ALJ's RFC finding: plaintiff "required a rest break of five to six minutes for every one hour of walking, but normal rest breaks would accommodate some of those breaks." AR 624. This aspect of the RCF reflects Dr. Elmi's restriction; Dr. Amirdelfan assessed rest breaks lasting 10 minutes for every 30 minutes of walking/standing. AR 657-58. Per the vocational expert's testimony, the need for a 10-minute break every hour would be too much time off task and would not allow for competitive employment. AR. 676.

1    Plaintiff argues that the ALJ erred in rejecting Dr. Amirdelfan's opinion because it was
2 not discredited by contradictory evidence expressed in another physician's opinion, but instead
3 was separated from the other opinions by a matter of degree.  ECF No. 16-1.  The applicable case
4 law supports plaintiff's argument.  "This is not a case of contradictory evidence of a physical
5 impairment, but one in which a treating physician's opinion on the ultimate question of the degree
6 of impairment differs."  Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987).  Here the
7 treating physician concluded that plaintiff's impairments require 10-minute breaks every 30
8 minutes of standing/walking, and the non-treating medical expert concluded that plaintiff's
9 impairments required 5–6-minute breaks for every hour of standing/walking.  AR 624, 627-28.
10 Under the law applicable to this case, "[i]f the ALJ wishes to disregard the opinion of the treating
11 physician, he or she must make findings setting forth specific, legitimate reasons for doing so that
12 are based on substantial evidence in the record."  Murray v. Heckler, 722 F.2d 499, 502 (9th Cir.
13 1983)

14    Here, in choosing to incorporate the non-treating medical expert's opinion into the RFC
15 over the treating physician's opinion, the ALJ stated that the treating physician's "opinion is not
16 consistent with the overall evidence of record," citing examples of records showing "normal
17 motor strength, intact sensation, and normal gait" and records "which indicated that the
18 claimant's symptoms improved over time wherein the claimant reported pain as two out 10 on
19 medications and seven out of 10 without medications, which was stable since prior visits."  AR
20 629.  The cited records do not obviously account for the discrepancy in rest-break times and the
21 ALJ does not draw the connections.  For example, in one of the medical records cited by the ALJ,
22 Dr. Amirdelfan noted normal gate, sensation, and motor strength but also noted restricted range of
23 motion in both the cervical and thoracic spine, spasm and tenderness of the paravertebral muscles,
24 and sinuous process tenderness.  AR 382.  It is not enough for the ALJ to point to "normal"
25 findings in the record without explaining how those findings support the decision to discredit a
26 treating physician's opinion, especially where that opinion only differs from a non-treating
27 physician's opinion as to the degree of limitation and not the fact of limitation.
28    Further, as to stability, the court agrees with plaintiff that the fact that a plaintiff's

11

condition is "stable" does not, without more, indicate that a plaintiff's condition is not disabling. An impairment can be both stable and disabling. The ALJ does not explain how or why the stability of plaintiff's condition translates into incorporation of the less-restrictive break limitations into the RFC.

Finally, the undersigned notes that the ALJ also pointed to plaintiff's substantial gainful activity that began after the period at issue as a rationale for discrediting the treating physician's restrictions. Although the court agrees that evidence dated beyond the relevant period (May 1, 2013 through July 31, 2016) may still bear weight as to the relevant period, the ALJ does not explain how the fact of plaintiff's later substantial gainful activity precludes the limitations articulated by the treating physician. ECF No. 16 at 14; AR 622, citing AR 196–97, 596, 875. The records reflect that while plaintiff did have a period of employment, he took medical leave during that period of employment (AR 875), and plaintiff testified that he was unable to maintain employment because he was "missing a ton of time because of my [ ] injuries." AR 44. Plaintiff testified his back pain caused him to be unable to do his work. AR 44-48. Given the ultimate failure of plaintiff's work attempt and his repeated absences, the ALJ's reference to plaintiff's work following the period at issue, without more, is not a clear and convincing reason to reject plaintiff's treating physician's opinion. Accordingly, the undersigned concludes that the ALJ failed to give an appropriate rationale for discrediting plaintiff's treating physician, and remand is necessary.

### D.  The ALJ Adequately Supported Rejection of Plaintiff's Subjective Testimony

The ALJ provided sufficient rationale for rejecting plaintiff's subjective testimony regarding his impairments. Evaluating the credibility of a plaintiff's subjective testimony is a two-step process. First, the ALJ must "determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. . . . In this analysis, the claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014) (internal citations omitted). Objective

medical evidence of pain or fatigue itself is not required. Id. (internal citations omitted). Second, if the ALJ does not find evidence of malingering, the ALJ may only reject the claimant's testimony by offering "specific, clear and convincing reasons for doing so." Id. (internal citations omitted). The Ninth Circuit has "repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." Id. at 1016.

The ALJ summarized plaintiff's testimony as follows:

> At the December 2018 hearing, the claimant testified that he was unable to work because he could not walk, and he was hunched over with back pain (Exhibit 16B/26). He testified that the pain made it difficult to tolerate a full workday (Exhibit 16B/38). He testified further that he could tend to his personal care, but he had to move slowly and carefully (Exhibit 16B/27). He testified that he had constant pain from his neck down to his left thumb and he had problems reaching in all direction (Exhibit 16B/29, 30). The claimant testified that he could cook a meal and go shopping, but it was difficult (Exhibit 16B/30, 31). He testified that he could drive without problem and that he attended church, but he had to stand up at times (Exhibit 16B/32). The claimant testified that he had difficulty sleeping (Exhibit 16B/32).

AR 625. The ALJ discounted plaintiff's subjective testimony by providing a detailed review of the relevant medical record and concluding that the "allegations of disability are not consistent with the claimant's medical evidence of record that documents degenerative spinal changes with limited spinal range of motion; however, the claimant's physical examination findings persistently documented intact sensation, normal gait, and normal strength, including grip strength." AR 625-28. The ALJ's reasons for discounting plaintiff's subjective testimony are legally sufficient. "Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F. 3d 1155, 1161 (9th Cir. 2008).

In addition, the ALJ relied on plaintiff's reported improvement in his symptoms with treatment and medication as a basis to discredit his subjective testimony. AR 627-28. "Impairments that can be controlled effectively with medication are not disabling." Warre v. Comm'r of Soc. Sec., 439 F.3d 1001, 1006 (9th Cir. 2006) (citing Odle v. Heckler, 707 F.2d 439,

13

440 (9th Cir. 1983) (affirming a denial of benefits and noting that the claimant's impairments were responsive to medication)). Specifically, the ALJ referenced treatment notes indicated that plaintiff was generally stable on his medication regimen and reported pain at a level of zero to two out of 10. AR 627, citing AR 904 (September 2016; reporting pain as zero with medications), 907 ("stable on current medication regimen"), 911 (August 2016; reporting pain as two on medications). Accordingly, the ALJ provided adequate rationale for discrediting plaintiff's subjective testimony.

### E. The ALJ Did Not Err by Failing to Apply the Grids

Plaintiff asserts that the current ALJ should have found him disabled for the period from August 29, 2013, through July 31, 2016, using Rule 202.06 of the Medical-Vocational Guidelines[6] ("the Grids"). ECF No. 16-1 at 14. The court agrees with defendant that this assertion is a non-starter because the ALJ determined that plaintiff was not disabled at step four, and application of the Grids does not happen unless the ALJ reaches step five. AR 630–31; Lounsburry, 468 F.3d at 1114. Plaintiff does not refute this in his reply brief, appearing to drop the argument. ECF No. 23. The undersigned finds no error here.

### F. Remand

The undersigned agrees with plaintiff that the ALJ's error in discrediting plaintiff's treating physician is harmful and remand for further proceedings by the Commissioner is necessary. An error is harmful when it has some consequence on the ultimate non-disability determination. Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006). The ALJ's error in this matter was harmful; the opinion of Dr. Amirdelfan, properly considered, may very well result in a more restrictive residual functional capacity assessment, which may in turn alter the finding of non-disability.

It is for the ALJ to determine in the first instance whether plaintiff has severe impairments and, ultimately, whether she is disabled under the Act. See Marsh v. Colvin, 792 F.3d 1170, 1173

---

[6] The Grids "present in a table form, a short-hand method for determining the availability and numbers of suitable jobs for a claimant." Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006) (internal citation omitted); C.F.R. Part 404, Subpart P, App. 2.

(9th Cir. 2015) ("the decision on disability rests with the ALJ and the Commissioner of the Social Security Administration in the first instance, not with a district court").  "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004).  Here, the ALJ failed to properly consider the medical opinion of Dr. Amirdelfan.  Further development of the record consistent with this order is necessary, and remand for further proceedings is the appropriate remedy.  The undersigned therefore recommends that this case be remanded to the Commissioner for further proceedings.

## VII.  CONCLUSION

For the reasons set forth above, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's motion for summary judgment (ECF No. 16), be GRANTED;

2. The Commissioner's cross-motion for summary judgment (ECF No. 20), be DENIED;

3. That the matter be REMANDED to the Commissioner for further consideration consistent with this order; and

4. The Clerk of the Court be directed to enter judgment for the plaintiff, and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one (21) days after being served with these findings and recommendations, plaintiff may file written objections with the court.  Such document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Local Rule 304(d).  Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: October 13, 2023

_/s/ Allison Claire_
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE